Michael Connett (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
T: (772) 783-8436
E: mconnett@sirillp.com

Mason A Barney*
Leslie Pescia*
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
T: (212) 532-1091
E: mbarney@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis*
Andreas Moffett*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 599-6072
E: klaukaitis@laukaitislaw.com
amoffett@laukaitislaw.com

**pro hac vice admission anticipated*

*Attorneys for Plaintiff & Putative Class Members*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Robby Yu, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC. and GREENWORKS NORTH AMERICA, LLC,<br><br>Defendants. | Case No.: 5:26-cv-7295<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Robby Yu, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Lowe's Companies, Inc. and Greenworks North America, LLC ("Defendants")[1] and alleges the following based on personal knowledge as to himself, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. This is a proposed class action arising from the dangerous battery design in certain Kobalt-branded 24V and 48V trimmers, blowers, mowers, chainsaws, and pruning saws ("Products" or "Tools")[2]. Specifically, Defendants designed, marketed, distributed, and sold the yard power tools equipped with defective lithium-ion batteries that can short-circuit when charged through the USB-C port while the batteries are inserted in the tools (hereinafter, the "Defect"), posing a severe risk of fire and serious injury to consumers.[3]

2. On July 9, 2026, the Consumer Product Safety Commission ("CPSC") announced the recall of approximately 554,780 Kobalt-branded garden tools sold at Lowe's retail stores nationwide and online at Lowes.com from January 2026 through May 2026 ("Recall"). This resulted in ***34 reports of batteries producing smoke, sparking, or catching fire due to the Defect***.[4] Defendants sold approximately 554,780 units of these recalled tools at premium prices ranging from $20 to $482.[5]

---

[1] Plaintiff reserves the right to amend the complaint to include any additional responsible parties or entities as the evidence or information may arise throughout discovery.

[22] The Recall affects Kobalt 24V and 48V yard power tools with USB-C batteries, including trimmers, blowers, mowers, chainsaws, pruning saws, power cleaner kits, and certain battery packs. The affected model numbers include KPC 3024-06, KB 324-06, KB 324D-06, KB 624-06, KB 624D-06, KOC 4248-06, KHB 6048-06, KMS 1524-06, and KCS 1448-06. Plaintiff reserves the right to amend this complaint to include additional products arising from the discovery.

[3] *See* CPSC Recall, https://www.cpsc.gov/Recalls/2026/Greenworks-Tools-Recalls-24V-and-48V-Kobalt-Yard-Power-Tools-with-USB-C-Batteries-Due-to-Risk-of-Serious-Injury-from-Fire-Hazard,(last accessed July 15, 2026).

[4] *Id.*

[5] *Id.*

3. Every recalled Product contains the identical battery architecture and identical charging mechanism.

4. Per the Recall Notice, purchasers were instructed to stop using the recalled Tools immediately and contact Greenworks to arrange for a free battery replacement.[6]

5. Additionally, Greenworks published an instructional guide on its website, directing consumers to identify their model and serial number and submit a request for a replacement battery.[7]

6. The Recall fails to offer any monetary relief whatsoever to the Plaintiff and purchasers of the Tools ("Class Members"[8]). Instead of providing a proper remedy, Defendants merely instructed consumers to submit a request to arrange a battery replacement. Regardless, Defendants' attempted repairs are an ineffective remedy: they do not compensate consumers for the price premium they paid for the Tools, the diminished value of the Tools, or the burdens associated with submitting a replacement battery request.

7. Furthermore, the CPSC's own studies indicate that consumers are less likely to comply with recalls that involve burdensome procedures or do not offer a full refund.[9]

8. Moreover, the Recall was announced far too late and is inadequate for the reasons described herein. The CPSC confirmed that the Tools' Defect had been reported to Defendants multiple times. Indeed, Defendants received 34 reports of the batteries producing smoke, sparking, or catching fire due to the Defect.[10]

---

[6] *Id.*

[7] *See* https://www.greenworkstools.com/pages/kobalt-product-recall (last accessed July 10, 2026).

[8] The definition of the Class Members is detailed below.

[9] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed July 10, 2026).

[10] *See* CPSC Recall Press Release, https://www.cpsc.gov/Recalls/2026/Greenworks-Tools-Recalls-24V-and-48V-Kobalt-Yard-Power-Tools-with-USB-C-Batteries-Due-to-Risk-of-Serious-Injury-from-Fire-Hazard, (last accessed July 10, 2026).

9. Defendants knew or should have known of these incidents through each of the 34 reports. But Defendants did nothing. Upon information and belief, Defendants failed to issue any warnings or make any ameliorative design changes after receiving the first incident reports. Instead, Defendants continued profiting from sales to reasonable consumers throughout the United States.

10. The Tools were distributed and sold nationwide through Lowe's retail stores and Lowes.com.[11]

11. Defendants generated substantial revenue from nationwide sales of the Tools, which were priced from roughly $20 to $482.[12]

12. Defendants were able to charge these premium prices through their marketing efforts and by withholding from consumers, specifically the fact that the Tools contain the Defect. Defendants knew, or should have known, that consumers prioritize safety and reliability, particularly any fire and burn hazard associated with a product. Nonetheless, Defendants failed to disclose the associated risks.

13. The Defect existed at the point of purchase. Plaintiff and Class Members reasonably believed the Tools were safe for their intended use and purchased based on that assurance.

14. Despite the Recall, the Defect remains, leaving the Tools unsafe, unfit for use, and worth substantially less than represented or warranted.

15. Each tool contains the same inherent Defect, which was present at the time of sale and creates a serious safety risk to consumers, unknown to buyers but known to Defendants. As a result, Plaintiff and other reasonable consumers were placed at a disadvantage, subjected to Defendants' superior industry knowledge.

16. No reasonable consumer would have purchased the Tools on the same terms had they known of the Defect. Defendants continued selling the Products

[11] *Id*

[12] *Id.*

despite receiving reports that batteries were producing smoke, sparking, and catching fire. Even after the reported burn hazards became known, Defendants continued to prioritize profit over safety. Despite finally acknowledging the Defect, Defendants have still failed to provide consumers, including Plaintiff and Class Members, with any meaningful remedy.

17. Had the Plaintiff and Class Members known about the Defect, they would not have purchased the Tools.

18. Plaintiff and all reasonable consumers trusted that Defendants' Tools were safe to use as intended. But the Recall proves they are not.

19. Defendants' Recall is inadequate and fails to provide purchasers with any monetary relief.

20. Plaintiff's economic injury occurred immediately upon purchase because Plaintiff paid for a product represented as safe for ordinary residential use but containing an undisclosed latent fire hazard.

21. Had Plaintiff known of the Defect at the point of purchase, they would have purchased a competing cordless outdoor power tool or paid substantially less.

22. The Defect substantially reduced the market value of the Products, which were priced at a premium on the day of purchase.

23. Plaintiff, on behalf of themself and the Class, seeks damages and all other relief available at law and in equity, including punitive damages for Defendants' misconduct. Plaintiff also seeks class wide injunctive relief, including: (i) a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice for the Tools; (ii) the implementation of a corrective advertising campaign to alert consumers to the dangers of the Defect; (iii) an offer to replace the Tools with a non-defective and safe product; and/or (iv) a full refund of the purchase price.

24. This action seeks to hold Defendants accountable for their conscious decision to use a dangerous design, their concealment of the known hazard associated with the Defect, and their insufficient recall remedy.

## PARTIES

***Plaintiff Robby Yu***

25. At all relevant times, Plaintiff Robby Yu was and is a resident and citizen of California, residing in Santa Clara, CA, who purchased a recalled Product. Plaintiff was unaware of the serious safety hazard associated with the Tool's design. On April 13, 2026, Plaintiff bought the recalled Product model KB 324-06 from a Lowe's retail store in Sunnyvale, CA, for $86.70.

26. Plaintiff reviewed the product packaging and the Lowe's point-of-sale product description before purchasing the Product. Those materials represented that the Product was intended for ordinary residential lawn-and-garden use and was suitable for such use. Plaintiff reasonably understood those representations to mean the Product could be safely charged and used in the ordinary manner intended by Defendants.

27. Plaintiff used the Tools as instructed for their intended residential lawn-and-garden purposes.

28. Plaintiff expected the battery could safely remain installed while charged in the manner instructed by Defendants.

29. Plaintiff would not have purchased or used the Tools if they had known about the Tools' Defect and that the Tools were unsafe to use.

***Defendant Lowe's Companies, Inc.***

30. Defendant Lowe's Companies, Inc. is a corporation incorporated under the laws of North Carolina and headquartered in Mooresville, North Carolina. According to information and belief, Defendant or its subsidiaries are involved in the marketing, sale, and distribution of the recalled Products.

***Defendant GreenworksNorth America, LLC***

31. Defendant Greenworks North America, LLC, is a limited liability company organized under the laws of North Carolina and headquartered in Mooresville, North Carolina. According to information and belief, Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale, and distribution of the recalled Products.

## JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff and at least one Defendant are citizens of different states.

33. This Court has personal jurisdiction over Defendants because Defendants do substantial business in California and within this District, receive substantial compensation and profits from the marketing, distribution, and sale of Products in this District, and have engaged in the unlawful practices described in this Complaint within this District.

34. Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendants regularly transact business in this District. Defendants have intentionally availed themselves of the laws and markets within this District. Plaintiff also resides in this District.

35. **Divisional Assignment**: Pursuant to Civil Local Rules 3-2(c) and 3-2(e), assignment to the San Jose Division is proper because Plaintiff resides in, and a substantial part of the events giving rise to the claims occurred in, Santa Clara County.

## COMMON FACTUAL ALLEGATIONS

### I. Defendants Knew, or Should Have Known, of the Defect

36. The CPSC announced a nationwide recall of the affected Defendants' Tools on July 9, 2026, affecting approximately 554,780 Tools units sold in the United States. The Recall includes Tools sold between January 2026 and May 2026 at Lowe's stores nationwide and Lowes.com.[13]

37. Defendants received at least 34 reports of burn hazards from the now-recalled Tools. Upon belief and information, no injuries have been reported.[14]

38. The Defect existed throughout the span of the Products' availability. Notably, Defendants had access to incident data and consumer feedback, as demonstrated by the press release posted on their website.[15]

39. On information and belief, Defendants did not issue any proactive safety alerts to consumers before the joint CPSC recall announcement, nor did they take action to limit sales or require modifications for older units.

40. The CPSC recall remedy requires consumers to contact Greenworks to request a battery replacement. However, this purported remedy requires affirmative consumer action and imposes an unnecessary burden by forcing consumers to tediously go through a convoluted process.[16]

41. The known risk of a fire or burn hazard due to the Defect, Defendants' dominant position in the portable tools market, and the likelihood that a substantial portion of defective Products remain in use all support Plaintiff's allegations that Defendants acted with knowledge of the Defect yet still represented, marketed, distributed, and sold unsafe Tools.

---

[13] *Id.*
[14] *Id.*
[15] *See* Greenworks Recall Press Release, https://www.greenworkstools.com/pages/kobalt-product-recall, (last accessed July 15, 2026).
[16] *Id.*

42. Contrary to Defendants' representations to reasonable consumers promising safety and durability, Defendants chose to ignore the serious safety hazards posed by the uniform Defect present in each tool, as well as industry guidance and recommendations. In doing so, Defendants revealed that, in reality, they are committed to their own profits—not to people and their safety.

43. As the designer and manufacturer of the Tools, Defendants had access to design specifications, pre-market safety testing, post-sale incident data, and consumer complaints from which it knew, or should have known, that the Tools contained the Defect.

44. Nevertheless, Defendants took no action to eliminate the Defect or, at the very least, adequately warn consumers of the Defect.

45. Accordingly, Defendants had a duty to investigate and disclose all safety hazards regarding the Tools, including the Defect.

46. As a direct result of Defendants' conduct, Plaintiff and the proposed class members suffered economic losses by paying a price premium for the Tools. Had Plaintiff and Class Members known the truth about Defendants' defective Products, they would not have purchased them or paid less for them.

## II. The Recall was Untimely and is Inadequate, Ineffective, Creates New Hazards, and was Designed to Fail

47. On July 9, 2026, the CPSC announced a voluntary nationwide recall of roughly 554,780 units sold in the United States by Defendants, all of which contain the same Defect, namely, the Tools' batteries.

48. Yet the Recall is dangerously deficient, both because of the unreasonable delay in notifying consumers and because the offered remedy is wholly inadequate. Despite the Defect making the Tools unsafe and unfit for their intended use, the Tools continued to be sold even after various reports of tool batteries short-circuiting.

49. Despite having the capability and expertise to mitigate the risk, Defendants failed to redesign the Products or issue sufficient consumer warnings. This delay contributed to the continued availability of defective Tools. Nevertheless, Defendants prioritized profit over the integrity and safety of the Tools and pushed the Tools into the marketplace with the Defect.

50. In addition, the Recall and its remedy are inadequate. Defendants merely instructed consumers to submit a replacement battery request through Greenworks to obtain a free replacement battery. This remedy imposes a burden on consumers: they cannot safely use the Products until the replacement battery is received and, after submitting the request, must wait an additional period for it to be processed and delivered.

51. The CPSC has maintained since 2003 that recall response rates drop significantly when consumers face cognitive or task overload or when the recall fails to provide sufficient incentives to participate.[17]

52. Defendants deliberately chose the most profitable approach to their business and the least harmful to its brand image, rather than a solution that would ensure the safety and durability of its Tools.

**III. The Failure of the Essential Purpose of the Warranties**

53. Defendants expressly warranted, through their Owner's Manuals and advertising, that the Tools were fit for their ordinary and intended use.

54. The Tools are also covered by the implied warranty of merchantability, which ensures that goods sold by a merchant are fit for their ordinary purpose.

55. Defendants clearly intended their warranties to benefit consumers who rely on the company for safe, durable Tools.

---

[17] RECALL EFFECTIVENESS RESEARCH: A REVIEW AND SUMMARY OF THE LITERATURE ON CONSUMER MOTIVATION AND BEHAVIOR, (July 2003), CPSC.gov, https://www.cpsc.gov/s3fs-public/pdfs/foia_RecallEffectiveness.pdf, at page 25 (last accessed July 10, 2026).

56. Despite these warranties, the Tools contain a uniform Defect that existed before and at the time of sale, rendering them unable to fulfill their fundamental purpose.

57. Defendants knew, or should have known, of the Defect and the dangers it posed before and at the time the Tools were sold.

58. Plaintiff and Class Members, by contrast, had no way of discovering the Defect or the risks associated with it prior to purchase.

59. Defendants knew, or should have known, of the Defect at the time of sale based on the Tools' design, industry safety guidance, and the multiple reported burn hazards to consumers.

60. Defendants were in a far superior position to identify, address, and disclose the Defect, whereas Plaintiff and Class Members had no ability to detect it at the time of purchase.

61. This disparity in bargaining power prevented Plaintiff and Class Members from receiving the benefit of the warranties.

62. The inequity was compounded by the fact that Defendants knew, or should have known, of the Defect, while Plaintiff and Class Members had no notice of it and no reason to suspect it, given Defendants' marketing of the Tools.

63. Defendants abused the trust it fostered with consumers by promoting, designing, manufacturing, and selling the Tools as safe and durable products, leaving Plaintiff and Class Members with no meaningful choice but to rely on Defendants' representations and accept their warranty terms.

64. Defendants knew Plaintiff and Class Members lacked the ability to detect the Defect and that they would ultimately bear the cost of repairing or replacing the defective Tools.

65. Defendants were aware of the Defect at the time of sale, while Plaintiff and Class Members were not and could not have reasonably discovered it.

66. Because the Tools were defective when they left the assembly line, Defendants were already in breach of their warranties at the moment Plaintiff and Class Members purchased them.

67. Had Plaintiff and Class Members known of the Defect, they would have negotiated different terms or declined to purchase the Tools altogether.

68. Defendants sold the Tools with full knowledge that they did not conform to their safety-based marketing claims and were not safe or suitable for their intended and foreseeable use.

69. The terms of the express warranties unreasonably favor Defendants at the expense of Plaintiff and Class Members.

70. The warranties failed in their essential purpose because (1) the Defect existed when the Tools left the manufacturing facility; and (2) Defendants failed to disclose the Defect at any point, including when contacted by customers regarding the Tools.

71. Accordingly, Plaintiff and Class Members are not limited to the remedies stated in the express warranties and seek all remedies that this Court finds just, proper, and permissible.

## **IV. Defendants' Actual or Constructive Knowledge of the Defect and Duty to Disclose the Defect**

72. Defendants knew or should have known that the Tools contained the Defect when sold to the public.

73. Defendants also knew, or should have known, that the Defect rendered the Tools unsafe, unstable, and unfit for their intended use.

74. Defendants’ knowledge is shown by their own design decisions, industry safety guidance, and the reported burn hazards presenting the Defect.

75. Despite this knowledge, Defendants did not fix the Defect or remove the Tools from the marketplace.

76. Instead, it continued to advertise and sell the unreasonably dangerous Tools as safe and durable.

77. Defendants had a duty to disclose the Defect and not conceal it from Plaintiff and Class Members.

78. Its failure to disclose, or active concealment, exposes Plaintiff and Class Members to serious injury.

79. Even after the Recall, Defendants continue to allow use of the defective Tools.

80. Had Plaintiff, Class Members, and the public known the Tools were defective and unsafe, they would not have purchased them.

81. Defendants improperly shifted to Plaintiff and Class Members the burden and cost of discovering the Defect, determining the Tools' unsafe condition, and addressing the resulting damages.

## **TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS**

82. Defendants have continuously marketed and sold the dangerous Products to unsuspecting customers. They continuously represented that the Products are safe and suitable for use.

83. By continuously repeating these false representations and failing to disclose that the Products contained a fire or burn hazard, Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendants might seek to apply.

84. As the creator and manufacturer of the Products, Defendants have had actual knowledge that the Products are defectively designed.

85. Defendants' knowledge of the Defect is evidenced by, amongst other things, the Recall Notice and reports of burn hazards as a direct result of using the Products as Defendants' intended.

86. Thus, at all relevant times, Defendants indisputably possessed continuous knowledge of the material dangers posed by the Products, and yet Defendants knowingly continued to allow the sale of the Products. Plaintiff's and other Class Members' claims are not time-barred.

87. Moreover, even after the Recall, Defendants are unable to prove that the Recall Notice reached all Product owners.

88. Plaintiff and other Class members could not have reasonably discovered and could not have known facts that would have caused a reasonable person to suspect that Defendants knowingly failed to disclose material information within their knowledge about a dangerous defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations should apply.

89. Throughout the time period relevant to this action, Defendants concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Defect described herein.

90. Defendants kept Plaintiff and the other Class Members in the dark about vital information essential to pursuing their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

91. Defendants had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Products, that the Products contain a uniform dangerous Defect, and that they pose safety concerns and are, in fact, dangerous.

92. Instead, Defendants continued to market the Products as suitable for their intended purpose to further profit from the sale of their Tools and prevent Plaintiff and other Class members from seeking redress.

93. Plaintiff and the other Class Members justifiably relied on Defendants to disclose the true dangerous nature of the Products they purchased and/or owned

because that Defect was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

94. Defendants' affirmative acts of concealment, including their continued marketing of the Defective Products as safe, reliable, and fit for their intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

**FED. R. CIV. P. 9(b) ALLEGATIONS**

95. Although Defendants are in the best position to know information about the design, manufacture, distribution, and sale of the Tools as well as the facts surrounding the Defect during the relevant timeframe, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

96. WHO: Defendants made material misrepresentations and/or omissions of fact through its marketing, on its website, product packaging, warranties, Owner's Manuals and labeling, through warranty claims, through reports of burn hazards associated with the Tools and the Defect and through authorized retailers of the Tools, which include statements such that the Tools are not defective and are safe and suitable for their intended use.

97. WHAT: Defendants' conduct here was, and continues to be, fraudulent because it omitted and concealed that the Tools are defective, unsafe, and unsuitable for their intended use in that the Tools contain a uniform Defect. Defendants' employees and representatives made affirmative misrepresentations as a part of Defendants' marketing of the Tools to Plaintiff and Class Members at the time of purchase regarding the same qualities. Defendants failed to adequately warn Plaintiff and Class Members that the Tools contained the Defect, and were not suitable for their intended use. Further, Defendants' conduct has the effect of deceiving Plaintiff and Class Members into believing that Tools are not defective,

and instead, are suitable for their intended use. Defendants knew, or should have known, that the existence of the Defect is material to the reasonable consumer, including Plaintiff and Class Members, and impacts their purchasing decisions, and yet Defendants omitted a necessary warning that the Tools are defective and are unsafe and unsuitable for their intended use.

98. **WHEN**: Defendants made material misrepresentations and/or omissions during the putative class periods and at the time Plaintiff and Class Members purchased the Tools, prior to and at the time Plaintiff and Class Members made claims after realizing the Products contained a uniform Defect and continuously throughout the applicable class periods.

99. **WHERE**: Defendants' marketing message and omissions were uniform and pervasive, carried through material misrepresentations and omissions on the Tools' labeling and packaging, its website(s), and the websites of authorized retailers.

100. **HOW**: Defendants made material misrepresentations of material facts regarding the Tools, including, but not limited to, the existence of the uniform Defect as well as the associated risks.

101. **WHY**: Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay a premium price for the Tools, the effect of which was that Defendants profited by selling the Tools to many thousands of consumers.

102. **INJURY**: Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have, absent Defendants' misrepresentations and omissions.

## CLASS ACTION ALLEGATIONS

103. Plaintiff brings this action on behalf of themselves and the following Classes under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

**Nationwide Class:** All persons in the United States who purchased the Products for personal use and not for resale during the fullest period allowed by law ("Class or Nationwide Class").

**California Sub-Class:** All persons in California who purchased the Products for personal use and not for resale during the fullest period provided by law ("California Sub-Class").

104. Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendants or any entity in which Defendants has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendants; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Hazard with Defendants.

105. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

106. **Numerosity**. Class Members are numerous and geographically dispersed, making joinder of all Class Members impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendants' books and records, as well as third-party retailers. Class Members may

be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

107. **Predominance** of Common Questions of Law and Fact. Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Products contained the Defect alleged herein;

b. Whether Defendants knew or should have known of the Defect;

c. Whether Defendants had to disclose the Defect to consumers;

d. Whether Defendants' representations and omissions were misleading or deceptive;

e. Whether Defendants' conduct was unfair or illegal;

f. Whether Defendants' conduct violated the California consumer protection statutes alleged herein;

g. Whether Defendants breached their implied warranties;

h. Whether Class Members suffered economic injury;

i. Whether Defendants' conduct violates public policy;

j. Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendants' acts and omissions of material facts;

k. Whether Defendants were unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Defective Products; and

l. Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief;

108. **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Products, and each sustained damages arising from Defendants' wrongful conduct, as disclosed herein. Plaintiff shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class have been similarly affected by Defendants' common misconduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries, including—but not limited to—ascertainable losses resulting from Defendants' deceptive omissions concerning the Products' safety and ability, as well as the proposed repair remedy's ability to function as intended.

109. **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including the issues that arise in this type of consumer protection litigation. Further, Plaintiff and counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of the putative Class.

110. **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.

111. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Defendants' unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiff and the members of the putative Class can obtain redress for the harm caused by Defendants' misconduct.

112. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendants; and

b. Adjudications of claims of the individual members of the Class against Defendants would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede

the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

## COUNT I

## Violation of California's Unfair Competition Law ("UCL")

## Cal. Bus. & Prof. Code §§ 17200 et seq.

**(On Behalf of Plaintiff and the California Sub-Class)**

113. Plaintiff incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

114. Plaintiff brings this claim individually and on behalf of the proposed California Class against Defendants.

115. California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 et seq., prohibits any unlawful, unfair, or fraudulent business act or practice, as well as unfair, deceptive, untrue, or misleading advertising.

116. Defendants engaged in unlawful, unfair, and fraudulent business practices by marketing, advertising, distributing, and selling the Products while failing to disclose that the Products contained a latent battery defect that could cause the batteries to smoke, spark, or catch fire during charging or ordinary use.

117. At all relevant times, Defendants knew or should have known of the latent battery defect through, among other things, pre-market testing, product design and engineering, quality assurance processes, warranty claims, consumer complaints, internal investigations, and other information uniquely within Defendants' possession and control.

***Fraudulent Business Practices***

118. Defendants' conduct constitutes a fraudulent business practice because Defendants made affirmative representations regarding the safety, quality, and

ordinary intended use of the Products while omitting the existence of the latent battery defect.

119. Defendants' omissions and affirmative safety representations were material because reasonable consumers purchasing battery-powered outdoor power equipment consider product safety and the ability to safely charge and operate the Products during ordinary residential use to be important in deciding whether to purchase the Products and how much to pay for them.

120. The omitted information was not known or reasonably knowable to Plaintiff or reasonable consumers.

121. Defendants knew, or were reckless in not knowing, that reasonable consumers would rely upon Defendants' safety-related representations and omissions when purchasing the Products.

122. Plaintiff and members of the California Class reasonably relied upon Defendants' omissions and affirmative representations regarding the Products' safety and suitability for ordinary residential use when purchasing the Products.

***Unfair Business Practices***

123. Defendants' conduct also constitutes an unfair business practice under the UCL.

124. Defendants' conduct caused substantial consumer injury because consumers purchased Products containing an undisclosed latent fire hazard that materially diminished the Products' value at the time of sale.

125. Consumers could not reasonably have avoided this injury because the Defect was latent and not discoverable through reasonable inspection before purchase.

126. The harm substantially outweighs any utility associated with Defendants' failure to disclose the Defect to consumers resulting from the sale of Products containing an undisclosed fire hazard.

127. Defendants' conduct also offends established public policies favoring truthful disclosure of material product safety defects and fair competition in the marketplace.

***Unlawful Business Practices***

128. Defendants' conduct further constitutes an unlawful business practice because it violates, among other laws:

a. The California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

b. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

c. California Civil Code §§ 1572, 1573, 1709, and 1710; and

d. Defendants' implied warranty obligations as alleged herein.

***Economic Injury and Restitution***

129. Plaintiff and members of the California Class suffered economic injury because they paid money for Products that were worth materially less than represented at the time of purchase due to the undisclosed Defect.

130. Plaintiff's and the California Class's economic injury occurred at the time of purchase. The subsequent Recall did not create the injury; rather, it confirmed that the Products contained the latent Defect when originally sold.

131. Had Defendants disclosed the latent battery defect, Plaintiff and members of the California Class would not have purchased the Products or would have paid substantially less for them.

132. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and the California Class lost money or property within the meaning of California Business and Professions Code § 17204.

133. Pursuant to California Business and Professions Code §§ 17203 and 17204, Plaintiff and the California Class seek restitution of all monies wrongfully obtained by Defendants through their unlawful, unfair, and fraudulent business practices, together with appropriate injunctive relief prohibiting Defendants from continuing the challenged conduct.

134. Plaintiff seeks restitution under the UCL in the alternative and alleges that legal remedies alone are inadequate to fully compensate Plaintiff and the California Class or to prevent Defendants' ongoing unfair competition.

**COUNT II**

**Violation of California's False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code §§ 17500 et seq.**

**(On Behalf of Plaintiff and the California Sub-Class)**

135. Plaintiff incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

136. Plaintiff brings this claim individually and on behalf of the proposed California Class against Defendants.

137. California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 et seq., prohibits any person or entity from making or disseminating any statement concerning property or services that is untrue or misleading, and that is known, or by the exercise of reasonable care should be known, to be untrue or misleading.

138. In the course of marketing and selling the Products, Defendants disseminated uniform advertising and promotional materials through, among other things, product packaging, product labeling, instruction manuals, retail point-of-sale materials, online product listings, and Defendants' own websites.

139. Through these materials, Defendants represented that the Products were suitable for ordinary residential lawn and garden use and could be safely charged and operated for their intended purpose.

140. Those representations were false or misleading because Defendants failed to disclose that the Products contained a latent battery defect that could cause the batteries to smoke, spark, or catch fire during charging or ordinary use.

141. Defendants knew, or by the exercise of reasonable care should have known, that these representations and omissions were false and misleading because Defendants possessed information regarding the latent Defect before Plaintiff and members of the California Class purchased the Products.

142. The omitted information was material because reasonable consumers consider product safety important when deciding whether to purchase battery-powered outdoor power equipment and how much to pay for it.

143. Plaintiff reviewed and reasonably relied upon Defendants' advertising and promotional representations before purchasing the Products. Had Plaintiff known the truth regarding the latent battery defect, Plaintiff would not have purchased the Products or would have paid substantially less for them.

144. Defendants' advertising and promotional practices were likely to deceive reasonable consumers acting reasonably under the circumstances.

145. As a direct and proximate result of Defendants' violations of the False Advertising Law, Plaintiff and members of the California Class lost money or property within the meaning of California Business and Professions Code § 17535, including the purchase price paid for Products worth materially less than represented at the time of sale.

146. Plaintiff and members of the California Class seek restitution of all monies wrongfully obtained by Defendants through their false and misleading

advertising, together with appropriate injunctive relief prohibiting Defendants from continuing to engage in the unlawful conduct alleged herein.

147. Plaintiff seeks restitution under the FAL in the alternative and alleges that legal remedies alone are inadequate to fully compensate Plaintiff and the California Class or to prevent Defendants' continuing false advertising and deceptive business practices.

**COUNT III**

**Violation of California Consumers' Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750 et seq.**

**(On Behalf of Plaintiff and the California Sub-Class)**

148. Plaintiff incorporates by reference and re-alleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

149. Plaintiff brings this claim individually and on behalf of the proposed California Class against Defendants.

150. The California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 et seq., prohibits unfair methods of competition and unfair or deceptive acts or practices undertaken in transactions intended to result in, or that result in, the sale of goods to consumers.

151. The Products are "goods" within the meaning of California Civil Code § 1761(a).

152. Defendants are "persons" within the meaning of California Civil Code § 1761(c).

153. Plaintiff and members of the California Class are "consumers" within the meaning of California Civil Code § 1761(d).

154. Plaintiff's purchase of the Products constitutes a "transaction" within the meaning of California Civil Code § 1761(e).

155. Defendants violated California Civil Code § 1770(a)(5) by representing that the Products possessed characteristics, uses, benefits, and qualities that they did not possess, including representing that the Products were suitable for safe charging and ordinary residential lawn and garden use while omitting that the Products contained a latent battery defect capable of causing the batteries to smoke, spark, or catch fire during charging or ordinary use.

156. Defendants violated California Civil Code § 1770(a)(7) by representing that the Products were of a particular standard, quality, and grade when, in fact, they contained an undisclosed latent safety defect that materially diminished their value and rendered them unsuitable for their represented use.

157. Defendants violated California Civil Code § 1770(a)(9) by advertising the Products as suitable and safe for their intended purpose while failing to disclose the latent battery defect known to Defendants.

158. Defendants' omissions and affirmative representations were material. A reasonable consumer purchasing battery-powered outdoor power equipment would consider the existence of a latent defect capable of causing batteries to smoke, spark, or catch fire to be important in deciding whether to purchase the Products and how much to pay for them.

159. Defendants possessed exclusive or superior knowledge of the latent battery defect through, among other things, engineering analyses, product testing, quality assurance procedures, warranty claims, consumer complaints, and internal investigations, yet failed to disclose that material information to Plaintiff and the California Class.

160. Plaintiff and members of the California Class were unaware of the latent battery defect and reasonably relied upon Defendants' affirmative safety representations and material omissions in deciding to purchase the Products.

161. Had Defendants disclosed the latent battery defect, Plaintiff and members of the California Class would not have purchased the Products or would have paid substantially less for them.

162. As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and members of the California Class suffered harm and are threatened with continuing harm absent injunctive relief requiring Defendants to cease the deceptive practices alleged herein and to provide truthful disclosures concerning the Products.

163. Concurrently with the filing of this Complaint, Plaintiff is serving Defendants with written notice pursuant to California Civil Code § 1782(a), identifying the particular violations of the CLRA alleged herein and demanding that Defendants correct, repair, replace, or otherwise rectify the unlawful practices described in this Complaint.

164. At this time, Plaintiff seeks only injunctive relief under California Civil Code §§ 1780(a)(2) and 1782(d), requiring Defendants to cease the deceptive practices alleged herein, to provide complete and accurate disclosures regarding the Products and the latent battery defect, and to take such other corrective action as the Court deems just and proper.

165. If Defendants fail to timely correct, repair, replace, or otherwise rectify the violations identified in Plaintiff's CLRA notice, Plaintiff intends to amend this Complaint to seek all remedies available under California Civil Code § 1780, including damages.

**COUNT IV**

**Breach of Implied Warranties**

**(On Behalf of Plaintiff and the Nationwide Class, or Alternatively the California Sub-Class)**

166. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

167. Plaintiff brings this Count on behalf of themselves and the ClassNationwide Class, or alternatively, the California Sub-Class ("Class").

168. Defendants were and are, at all relevant times, merchants involved in the manufacturing, distribution, warranting, and/or sale of the Products.

169. The Products were and are, at all relevant times, a "good" under the relevant laws.

170. Defendants knew or had reason to know of the specific use for which the Products, as goods, were purchased.

171. Defendants entered into agreements with retailers, suppliers, and/or contractors to sell their Products to be used by Plaintiff and the proposed Class Members.

172. Defendants provided Plaintiff and the proposed Class Members with implied warranties that the Products was merchantable and fit for the ordinary purposes for which the Products was used and sold and was not otherwise injurious to consumers, that the Products would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendants in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendants and Plaintiff and Class Members.

173. Defendants breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose. The Products contain the

Defect, rendering the Products unsafe to use as intended. Therefore, the Products are not fit for their ordinary purpose.

174. As instructed by the Recall Notice, Plaintiff is forced to completely discontinue use of the Products due to the ongoing safety risk of the burn hazard.

175. The aforementioned problems associated with the Products constitute safety risks, rendering the Products unsafe and unsuitable for consumers. Therefore, there is a breach of the implied warranty of merchantability.

176. Moreover, due to the inadequate and overdue nature of the Recall, it is not required and would be futile for Plaintiff to provide Defendants further opportunity to cure their breach.

177. Plaintiff and Class Members have had sufficient direct dealings with either Defendants or one of their authorized retailers, representatives, and agents to establish a contract between Defendants, on the one hand, and Plaintiff and each Class Member, on the other hand.

178. Nevertheless, privity is not required because Plaintiff and each Class Member are the intended beneficiaries of Defendants' warranties and their sale through retailers. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranties provided by Defendants. Defendants' warranties were designed for and intended to benefit the consumer only, and Plaintiff and Class Members were the intended beneficiaries of the Products. Thus, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Products and their warranties.

179. Defendants impliedly warranted that the Products were safe, suitable, of merchantable quality, and fit for their intended purpose. These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendants was safe and suitable to operate as a portable tools under foreseeable conditions of use; (ii) a

warranty that the Products would be fit for its intended use while the Producst is being used; and (iii) a warranty that the Produsct would conform to all of the promises and affirmations of fact on the Products' label and online advertising.

180. Instead, the Products contain a defective design and/or manufacture, as alleged herein. As a result of the Defect, the Products fail to conform to the promises or affirmations of fact on their labels and in their online advertising.

181. Defendants failed to adequately warn Plaintiff and Class Members that the Products contained the Defect, were not safe or suitable for use, and posed a risk of serious risk of fire or burn injuries.

182. Defendants breached the implied warranties because the Products were and are sold with the Defect.

183. Defendants' attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

184. Plaintiff and Class Members had no meaningful choice in determining the terms of that unreasonably favored Defendants, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Products. A gross disparity in bargaining power existed between Defendants and Plaintiff and the Class Members, and Defendants knew or should have known that the Products were defective at the time of sale.

185. Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose. Instead, the Products suffered, and continue to suffer, from the Defect as alleged herein.

186. Defendants' failure to adequately repair or replace the dangerous Products rendered the warranty incapable of fulfilling its essential purpose.

187. As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and

are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

**COUNT V**

**Unjust Enrichment**

**(By Plaintiff, individually, and on behalf of the Nationwide Class Or, in the alternative, the California Sub-Class)**

188. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

189. Plaintiff brings this claim on behalf of the Nationwide Class, or alternatively the California Subclass.

190. Plaintiff and the putative Class Members conferred a benefit on Defendants by purchasing the Products—payments that Defendants knowingly accepted while aware of the product's defect and unfitness for its intended use.

191. Defendants either knew or should have known that the payments rendered by Plaintiff and Class Members were given with the expectation that the Tools would have the qualities, characteristics, and suitability for the use represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

192. By its wrongful acts and omissions described herein, including selling the Products, which contained a Defect, Defendants were unjustly enriched at the expense of Plaintiff and putative Class Members.

193. Defendants' wrongful conduct directly caused Plaintiff's detriment and resulted in Defendants' unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

194. Defendants have unjustly profited from their unlawful, unfair, and deceptive conduct at the expense of Plaintiff and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendants to retain

the profits, benefits, and other compensation obtained through the sale of the Products, as such enrichment was directly tied to the misconduct alleged herein.

195. Defendants were unjustly enriched by retaining revenues from Class Members' purchases of the Products. Such enrichment is unjust and inequitable because Defendants knowingly manufactured, marketed, and sold defective and dangerous Products while omitting material facts, causing Plaintiff and Class Members to purchase products they otherwise would not have bought had the truth been disclosed.

196. Defendants continued to sell the Products with their inherent Defect even after learning of 34 reports regarding burn hazards. Even after these known incidents, Defendants continued to tout the safety of their product, profiting significantly throughout the sales period.

197. Defendants' conduct allows it to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiff and Class Members, and Defendants' benefit and enrichment. Defendants' retention of these benefits violates the principles of fundamental justice, equity, and good conscience.

198. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

199. Plaintiff and Members of the Classes seek disgorgement of all profits resulting from such overpayment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, respectfully requests that this Court:

a. Declare that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class

Representative, and appointing the undersigned counsel as Class Counsel;

b. Award Plaintiff and Class members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial, except for injunctive relief only under the CLRA;

c. Declare that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Tools;

d. Order Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

e. Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendants' willful and reckless disregard of the serious risk of fire and burn injuries to consumers despite their knowledge of the Defect;

f. Order such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims so triable.

DATED: July 15, 2026

Respectfully submitted,

Michael Connett (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Ste. 1000
Los Angeles, CA 90017
T: (772) 783-8436
E: mconnett@sirillp.com

Mason A Barney*
Leslie Pescia*
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151
T: (212) 532-1091
E: mbarney@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis*
Andreas Moffett*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 599-6072
E: klaukaitis@laukaitislaw.com
amoffett@laukaitislaw.com

**pro hac vice admission anticipated*

*Attorneys for Plaintiff & Putative Class Members*